J-S58001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD J. FEHIR, JR. | : | |
| | : | |
| Appellant | : | No. 1355 WDA 2018 |

Appeal from the Judgment of Sentence Entered April 24, 2018
In the Court of Common Pleas of Beaver County
Criminal Division at No(s):  CP-04-CR-0000434-2016

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:  **FILED DECEMBER 20, 2019**

Richard J. Fehir, appeals from the judgment of sentence entered on April 24, 2018, in the Court of Common Pleas of Beaver County, following his conviction of multiple counts of rape,[1] involuntary deviant sexual intercourse (IDSI),[2] sexual assault,[3] aggravated indecent assault,[4] indecent assault,[5]

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), (2) and (c).

[2] 18 Pa.C.S.A. §§ 3123(a)(1), (2), (7), and (b).

[3] 18 Pa.C.S.A. § 3124.1.

[4] 18 Pa.C.S.A. §§ 3125(a)(1), (2), (3), (7), and (b).

[5] 18 Pa.C.S.A. §§ 3126(a)(1), (2), (3), (4), (7), and (8).

indecent exposure,[6] unlawful contact with a minor,[7] corruption of a minor,[8] and endangering the welfare of a child.[9] On appeal, Fehir claims the evidence was insufficient to sustain his conviction for rape of a child and the trial court erred in allowing the Commonwealth to re-open its case-in-chief, after Fehir moved for a judgment of acquittal, to allow formal identification of him as the perpetrator. After review, we affirm.

The trial court summarized the facts behind Fehir's conviction as follows.

> On January 16, 2018, [Fehir] proceeded to a jury trial in this matter. . . . The Commonwealth called [the Victim] to testify. [The Victim] testified that she is familiar with Richard Fehir because he was her stepfather. Testimony by [the Victim] provided that Richard Fehir "raped and molested [the Victim] for ten years" beginning when she was "about five.". . .
>
> * * * *
>
> [The Victim] testified that [ ] Fehir would come into her room at night and watch her while she was sleeping or pretending to sleep. [ ] Fehir would touch [the Victim] inappropriately, he would massage "down [her] back to [her] butt and then [her] thighs[;]" this is where it started. [The Victim] further indicated that eventually, [ ] Fehir would pull down her pants and "put his mouth on [her] vagina[.]" The Victim testified that [ ] Fehir would perform these acts "[a]t least a few times a month when he would go out[.]". . .

_____

[6] 18 Pa.C.S.A. § 3127(a).

[7] 18 Pa.C.S.A. § 6318(a).

[8] 18 Pa.C.S.A. § 6301(a)(1).

[9] 18 Pa.C.S.A. § 4304(a)(1).

When [the Victim] was seven or eight years old, she testified that things got worse,

> [i]t went from [Fehir] putting his mouth on [her] vagina, he would put his hands on it. Then he would come in his boxers and he would take his penis out and he would rub it on [her] vagina.

[The Victim] testified that she would try to prevent this from happening by "locking the door, but there was a key to [her] door, so he would just open it." The Victim indicated that, during the times when [ ] Fehir would put his mouth on her vagina, there was penetration with his tongue. [The Victim] further provided that "[Fehir], would rub his penis on [her] vagina with [her] pants pulled down and [] he accidently went inside [her]." As a result of [ ] Fehir's penis entering the Victim's vagina, "[she] bled" and [ ] Fehir told her she "should get cleaned up, so [she] had to go take a shower." According to [the Victim], she told her mother that she was bleeding but didn't say why; this occurred "before [she] hit puberty" and "[she] might have been 15." [The Victim] also testified about a time when she was six or seven years old when [ ] Fehir was rubbing his penis on her and there was penetration. This incident likewise caused the Victim to bleed. The Victim stated that [ ] Fehir caused penetration with his penis as well as contact with his semen when she was about fourteen or fifteen years old, testifying as follows:

> [h]e took me to his bedroom. While I pretended to sleep, he carried me in, and he was rubbing his penis on my vagina without clothes. My pants were pulled down. He had accidentally went all the way inside of my vagina with his penis, and he ejaculated onto me, onto my vagina. That's when he told me that I should probably go get cleaned up, and I cried in the shower.

The Victim testified that once she hit puberty, [ ] Fehir was more careful about his actions in that "[h]e would make sure not to go inside [her] with his penis."

* * * *

After the Commonwealth rested its case, the [d]efense made a motion for judgment of acquittal on two bases: 1) that none of the witnesses made an in-court identification of [ ] Fehir, and 2)

- 3 -

that in viewing the evidence in the light most favorable to the Commonwealth, no reasonable juror could find [Fehir's] guilt beyond a reasonable doubt. With respect to the first basis for the motion, counsel for [Fehir] stated that during the course of the testimony by the three lay witnesses, [the Victim], [her friend, J.W.], and [her cousin, K.J.], and by the law enforcement officers . . . there had at no time been an in-court identification of [Fehir] as the perpetrator. Further, while he had been referenced by name, the defense argued that there was not a single occasion where [Fehir] was identified in court as the perpetrator of the crimes, and that the Commonwealth had not proven [Fehir] was the person who committed these offenses. Thereafter, there was a discussion on the record, in chambers as follows:

> [The Commonwealth]: Your Honor, my recollection is there was a stipulation to his identification. I was relying on that. I was not aware that that was an issue that would be brought up by defense. If that is the issue, and he wishes to address it, I would ask to recall a witness.
>
> [The Defense]: Well, Your Honor, they have rested their case, and I have never stipulated to his identification. I have done that in the past. Once they said, do you see him in the courtroom and can you describe what he is wearing, where he is sitting, something to that effect. It never occurred. I never made that stipulation because the issue never came up.
>
> THE COURT: Never had that one.
>
> [The Commonwealth]: In this case, Judge, we have his voice and we have his voice, identified[10] and we have multiple victims coming into the courtroom and describing their relationship with him. I can tell you that there were times in the trial that [the Victim] referred to him by gesturing in the courtroom and that she did in the courtroom during her testimony and

---

[10] During trial, the parties stipulated to the admission of a tape-recorded conversation between the Victim and Fehir, which they played for the jury while the Victim testified. *See* Trial Court Opinion, 11/16/18, at 7-8.

- 4 -

that she answered my questions in the affirmative. To me that seems to be more of a technicality than anything else. If it's a technicality that needs to be corrected, I would ask leave of the Court to correct it.

[The Defense]: Well, Your Honor, whether it's a technicality or not I can't speak to that, but I mean there is a reason that we have lineups and other forms of in person identification so that we can establish that the person who is at defense table is the person who is accused of the crime and committed the crime. If you read that transcript, whether somebody nodded, gestured, passively alluded, there is not a single indication in this record that that person sitting in the courtroom is the person who committed these offenses.

[The Defense]: Even in opening statements counsel referred to his client, Mr. Fehir, who was charged with these crimes, who is here. I, I am astounded, Judge. I don't understand the nature of that.

THE COURT: Insofar as the audio stipulation, I am going to try to recall however that went. I know we stipulated to the authentication of it.

[The Defense]: I stipulated to the admission of the recording. That's it. I never stipulated that that was his voice on the recording. I simply didn't require that the officer come in to authenticate the recording itself. That's it.

THE COURT: Well, certainly I've been involved in cases where the Commonwealth is permitted to re-open their case after having closed. So I think maybe given all of the circumstances, witnesses making reference to him, nodding towards, pointing towards him as the [d]efendant, given those circumstances in order to make the record abundantly clear l am going to allow the Commonwealth to re-open and call a witness. I don't know where it goes from there.

After conducting a colloquy of [Fehir] for purposes of whether he intended to testify on his own behalf, the [trial court] permitted

- 5 -

the Commonwealth to re-open its case and recall [the Victim] to testify. At that time, [the Victim] testified that, "throughout [the] hearing [she had] been testifying about Richard J. Fehir, Jr.[,]" and that he was seated in the courtroom wearing "[a] blue shirt, [and] a green-blue tie." At that point, the Commonwealth requested that the record reflect that [Fehir] had been identified by the witness, and the [trial court] directed that the record reflect the same.

Following deliberations in the case, the jury rendered a verdict of guilty as to twenty-three (23) of the twenty-four (24) counts set forth in the amended [i]nformation.[11] The [trial court] held a sentencing hearing on April 24, 2018[,] at which time [Fehir] was sentenced, by [o]rder on the same date, to an aggregate sentence of not less than 306 months or 25 and 1/2 years to not more than 612 months or 51 years of total confinement with a consecutive term of probation of three years. The [o]rder further provided that [Fehir] is to comply with the registration requirements of 42 Pa. C.S.A. §§ 9799.1 *et seq*, and that he is required to remain registered with the Pennsylvania State Police for the remainder of his life.

Trial Court Opinion, 11/16/18, at 3-5, 8-10 (record citations omitted).

On May 1, 2018, Fehir filed a post-sentence motion, which the trial court denied on August 28, 2018. The instant, timely appealed followed. On September 28, 2018, the trial court ordered Fehir to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Fehir filed a timely Rule 1925(b) statement on October 10, 2018; the trial court filed an opinion on November 16, 2018.

_____

[11] The Commonwealth had withdrawn count 15 of the information during trial.

In his first issue on appeal, Fehir challenges the sufficiency of the evidence supporting his conviction for rape of a child. Fehir's Brief, at 8. We find Fehir has waived this issue.

"[W]here an appellant wishes to preserve a claim that the evidence was insufficient, his Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient so this Court can then analyze the element or elements on appeal." **Commonwealth v. Roche**, 153 A.3d 1063, 1072 (Pa. Super. 2017), *appeal denied*, 169 A.3d 599 (Pa. 2017). If a Rule 1925(b) statement does not specify the unproven element, the appellant has waived the sufficiency on appeal. **See Commonwealth v. Tyack**, 128 A.3d 254, 260 (Pa. Super. 2015).

Here, Fehir's Rule 1925(b) statement states, "Was the evidence presented by the Commonwealth insufficient to support the jury's guilty verdicts?" Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 192b(b), 10/10/18, at 1. Thus, not only did Fehir fail to specify any element for which the evidence was insufficient, he failed to delineate which conviction he meant to challenge. It is evident from the trial court's lengthy and detailed Rule 1925(a) opinion, it had no idea that Fehir was challenging solely the sufficiency of the evidence underlying the age element for rape of a child. In any event, the presence of a trial court opinion evaluating Fehir's sufficiency claim is of no moment to our analysis, "because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent

- 7 -

on an appellee's argument or a trial court's choice to address an unpreserved claim." **Tyack**, **supra** at 261. Fehir has failed to preserve this issue for our review.[12]

In any event, had we addressed Fehir's claim on the merits, we would have determined the Commonwealth presented sufficient evidence to sustain his conviction for rape of a child for the reasons set forth in the trial court's opinion. **See** Trial Court Opinion, 11/16/18, at 13, 15.

In his second and final claim, Fehir maintains the trial court erred when it allowed the Commonwealth to reopen the case to allow the Victim to identify him as the perpetrator. **See** Fehir's Brief, at 9. We disagree.

This Court has stated that we review a trial court's decision to reopen a case for an abuse of discretion. **See Commonwealth v. Best**, 120 A.3d 329, 347 (Pa. Super. 2015). "Under the law of this Commonwealth a trial court has the discretion to reopen a case for either side, prior to the entry of final

---

[12] Even if Fehir had filed an adequate Rule 1925(b) statement, we would still find he had waived this claim. His argument on this issue consists of a single page. Within that argument, he fails to cite to the record. He does not discuss the evidence. He does not even explain why the evidence was insufficient to sustain a conviction for rape of a child because the Commonwealth failed to prove age, while apparently conceding the evidence was sufficient to sustain the age of elements of some for his convictions for IDSI, aggravated indecent assault, and indecent assault. Thus, we find Fehir waived his sufficiency argument for this reason as well. **See Commonwealth v. Liston**, 941 A.2d 1279, 1285 (Pa. Super. 2008) (*en banc*), *affirmed in part and vacated in part*, 977 A.2d 1089 (Pa. 2009); Pa.R.A.P. 2101.

judgment, in order to prevent a failure or miscarriage of justice." ***Id.*** (citations omitted). Further, our Supreme Court has stated,

> [w]here the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. In this respect, it is not sufficient to persuade the appellate court that it might have reached a different conclusion . . . Rather, one must go further and show an abuse of the discretionary power. [A]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Safka***, 141 A.3d 1239, 1248-49 (Pa. 2016) (quotation marks and citations omitted).

Here, Fehir has not met this heavy burden. His argument, apart from boilerplate and a brief explanation of what occurred below, consists of two sentences wherein he baldly contends the trial court's decision to reopen the case was both erroneous and prejudicial. Fehir's Brief, at 9. Fehir does not cite to any precedent to support his claim of legal error. Moreover, Fehir does not explain how the decision was prejudicial given this was a case where identity was not an issue because the Victim and both of the other fact witnesses had long-standing relationships with him. Moreover, he never addresses how the trial court abused its discretion.

In any event, after a thorough review of the record, we agree with the argument the Commonwealth made at trial. In particular, we agree the Victim had clearly identified Fehir by name and relationship and the lack of a formal in-court identification of Fehir was, at worst, at technicality, particularly since

Fehir stipulated to the admissibility of the audiotaped conversation between himself and the Victim. *See* N.T. Trial, 1/18/18, at 512-14. Moreover, in its Rule 1925(b) opinion, the trial court thoroughly addressed its reasons for permitting the Commonwealth to reopen the case. *See* Trial Court Opinion, 11/16/2018, at 11-13. Because we discern no abuse of discretion or error of law, we adopt its reasoning. *See id.* Fehir's second claim does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/20/2019